[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14928
Non-Argument Calendar
_____

D. C. Docket No. 9:06-cr-80158-KLR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY R. MASILOTTI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 8, 2012)

Before CARNES, HULL and WILSON, Circuit Judges.

PER CURIAM:

Anthony Masilotti appeals the district court's denial of his 2011 motion to

vacate the 2007 forfeiture of his property that was charged and ordered in his

criminal proceedings.  After review, we affirm.

## I. BACKGROUND

To understand the issues in this appeal, we recount the protracted procedural history of Masilotti's criminal case.

## A.    Information and Criminal Forfeiture

On January 11, 2007, Anthony Masilotti, a former county commissioner for Palm Beach County, Florida, pled guilty to an information charging him with a dual-object conspiracy: (1) to commit mail and wire fraud by using mail and wire communications to deprive another of honest services, in violation of 18 U.S.C. §§ 1341 (general mail fraud), 1343 (general wire fraud), and 1346 (defining "scheme or artifice to defraud" for purposes of the mail and wire fraud statutes to include a scheme to deprive another of the right to honest services); and (2) to impede the Internal Revenue Service in the collection of personal income taxes, in violation of 26 U.S.C. § 7212 (impeding the IRS).  See also 18 U.S.C. § 371 (conspiracy).  The information charged, inter alia, that Masilotti used his position as county commissioner to advance his undisclosed financial interest in certain real estate transactions.

The information also included a criminal forfeiture count that sought the forfeiture of: (1) $9.5 million; (2) various parcels of real property; (3) all Masilotti's interests in two entities, Micco Eastern Holdings, LLC ("MEH") and

2

ARM Family Land Trust (the "ARM trust"); and (4) all Masilotti's interests in a bank account and several certificates of deposit.  The information charged the forfeiture pursuant to 28 U.S.C. § 2461, 18 U.S.C. § 981(a)(1)(C), and 21 U.S.C. § 853.  Because this appeal involves only the forfeiture count, we outline how the forfeiture occurred under these statutes in Masilotti's case.

First, 28 U.S.C. § 2461(c), cited in the information, makes "criminal forfeiture available in every case that the criminal forfeiture statute [18 U.S.C. § 982] does not reach but for which civil forfeiture is legally authorized."  United States v. Padron, 527 F.3d 1156, 1161-62 (11th Cir. 2008).  Civil forfeiture is legally authorized for Masilotti's mail and wire fraud conspiracy offense because (1) under 18 U.S.C. § 981(a)(1)(C), the government may seek civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to," among other things, a conspiracy to commit "any offense constituting 'specified unlawful activity'" as defined by 18 U.S.C. § 1956(c)(7); and (2) the offenses covered by 18 U.S.C. § 1956(c)(7) include the mail and wire fraud offenses here.  See 18 U.S.C. § 1956(c)(7)(A) (citing 18 U.S.C. § 1961(1)).  Accordingly, since civil forfeiture is legally authorized by 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) makes criminal forfeiture available for the mail and wire fraud conspiracy in Masilotti's criminal case.

**B.    2007 Plea Agreement and Sentence**

3

In his plea agreement, Masilotti consented to the forfeiture charged in this case and waived any defenses and right to appeal.  Specifically, Masilotti acknowledged that he personally profited from his criminal conduct in an amount between $7,000,000 and $20,000,000.  He agreed to voluntarily forfeit $175,000 in cash, parcels of real property in Brevard County and Martin County, Florida, and all interests in MEH and the ARM trust.  Notably too, in his plea agreement Masilotti also waived "all constitutional, legal and equitable defenses to the forfeiture of the assets in any judicial or administrative proceeding," "any claim or defense under the Eighth Amendment of the United States Constitution, including any claim of excessive fine, to the forfeiture of these assets by the United States," and "any right to appeal any order of forfeiture entered by the Court pursuant to this Plea Agreement."

On January 11, 2007, the district court conducted a plea hearing and accepted Masilotti's guilty plea.  In accordance with Masilotti's plea agreement and Federal Rule of Criminal Procedure 32.2(b)(2), the district court also entered a preliminary order of forfeiture in Masilotti's criminal case on January 11, 2007.[1] The district court's order listed Masilotti's interests in each of the above assets explicitly referenced in the plea agreement.

---

[1]Federal Rule of Criminal Procedure 32.2 outlines the procedure a district court must follow to order a criminal forfeiture.  After a guilty plea is entered and the district court determines the property at issue is subject to forfeiture, the court must enter a preliminary order of forfeiture.  Fed. R. Crim. P. 32.2(b)(1)-(2).

On June 29, 2007, the district court sentenced Masilotti to 60 months' imprisonment in accordance with the plea agreement.  That same day, the district court signed a "Final Order of Forfeiture" in the case, providing that the assets listed in the plea agreement and the preliminary order of forfeiture were forfeited.[2]

On July 2, 2007, the district court entered a "Judgment in a Criminal Case" in Case No. 06-80158 (the "Criminal Judgment") against Masilotti. The Criminal Judgment listed Masilotti's sentence and also expressly incorporated the forfeiture order, stating: "The defendant shall forfeit the defendant's interest in the property as stated in the plea agreement and preliminary order of forfeiture to the United States."  See Fed. R. Crim. P. 32.2(b)(4)(B).

Masilotti did not appeal his sentence or conviction.

## C.    Masilotti's 2009 Post-Conviction Motion for Reduction of Sentence

Over two years later, on October 17, 2009, Masilotti filed a motion in the criminal case to reduce his sentence.  Masilotti argued that he was deprived of his due process and equal protection rights because the United States had not filed a motion to reduce his sentence based on his willingness to cooperate.  Masilotti also questioned the constitutionality of the honest services fraud statute, 18 U.S.C. § 1346, cited in his information and plea agreement.

---

[2]At sentencing—or at any time before sentencing if the defendant consents—the preliminary forfeiture order becomes final as to the defendant.  Fed. R. Crim. P. 32.2(b)(4)(A). The final order of forfeiture is final with respect to any third parties with interests in the forfeited property.  See id. at 32.2(c)(2).

The district court denied Masilotti's motion on November 2, 2009. In its order the district court noted that it was "of the opinion that the Honest Services Statute is unconstitutional" and that the Supreme Court would soon rule on the statute's constitutionality.

## D.    Masilotti's 28 U.S.C. § 2255 Motion in 2009

On November 13, 2009, Masilotti filed a 28 U.S.C. § 2255 motion challenging the constitutionality of his conviction and sentence. Masilotti based his § 2255 motion in large part on the district court's above comments on the honest services fraud statute's constitutionality.

The magistrate judge filed a report recommending that Masilotti's § 2255 motion be denied as time-barred and because the district court's comments provided no basis for relief. The district court adopted the report and denied Masilotti's § 2255 motion. Masilotti's motion for reconsideration was also denied.

Masilotti filed a notice of appeal from the denial of his § 2255 motion, which the district court treated as an application for a certificate of appealability ("COA"). On April 5, 2010, the district court denied the COA. Masilotti's motion for reconsideration was also denied.

Masilotti then sought a COA from this Court. On June 24, 2010, while Masilotti's COA application was pending, the Supreme Court decided Skilling v.

6

United States, 130 S. Ct. 2896 (2010), which held, in relevant part, that the honest services fraud statute was not unconstitutionally vague so long as it was construed to proscribe only bribery and kickback schemes. Id. at 2931.

In an August 2, 2010 order, this Court denied Masilotti's COA application, concluding that the district court had properly denied his § 2255 motion as time-barred and thus Masilotti had failed to demonstrate that reasonable jurists would find debatable the denial of his § 2255 motion.

Masilotti moved for reconsideration in light of Skilling. This Court denied Masilotti's motion on October 6, 2010.

**E.    Masilotti's 28 U.S.C. § 2241 Petition in 2010**

In 2010, Masilotti filed a petition under 28 U.S.C. § 2241 in the district court. Masilotti again asked the district court to vacate the honest services fraud portion of his conspiracy conviction. Masilotti argued that Skilling established that he had been convicted of a "non-existent offense" because the stipulated facts in his change-of-plea hearing did not show that he had received bribes or kickbacks. Masilotti also asked the court to vacate the 2007 criminal forfeiture order included in his sentence.

The magistrate judge issued a report recommending denial of Masilotti's § 2241 petition. The magistrate judge found that one of Masilotti's fraudulent real estate transactions—the "Aggregates transaction"—could no longer sustain an

7

honest services fraud conspiracy conviction because there was no direct evidence that Masilotti received bribes or kickbacks from that scheme. But the magistrate judge found that another real estate transaction—the "Diocese transaction"— supported Masilotti's honest services fraud conspiracy conviction because the admitted facts showed that Commissioner Masilotti's receipt of $50,000 for advocating the sale of certain property violated the honest services fraud statute. The magistrate judge thus concluded that Masilotti was not convicted of a non-existent offense. Additionally, the magistrate judge found that Masilotti was not entitled to relief because (1) he pled guilty to a dual-object conspiracy, (2) the second object of the conspiracy was to impede the IRS in the collection of personal income taxes, and (3) the second object was not affected by Skilling.

In a March 9, 2011 order, the district court adopted the report, rejected both Masilotti's and the government's objections, and denied Masilotti's § 2241 petition. In ruling on Masilotti's objections, the district court recounted the factual basis of Masilotti's plea that showed Masilotti received a kickback or bribe as part of the Diocese transaction and explained why his conviction survived Skilling as follows:

> The factual basis for Mr. Masilotti's guilty plea states that he "used his public office to advocate the sale of land to co-conspirator Daniel N. Miteff and Miteff's partners, and solicited the Village Manager of Royal Palm Beach to send an official letter to Masilotti as county commissioner outlining the Village's desire for the Diocese to assure it sold the land to a bidder that would provide a public park." Mr.

8

Masilotti "made these requests without disclosing that he had a financial interest in the transaction and in the Diocese awarding the bid to Daniel Miteff, that is, he expected to be compensated—and later was in fact compensated—by Miteff for his efforts on Miteff's behalf." Based on these admissions and the remainder of the factual record, the Court must conclude that Mr. Masilotti acted knowingly and corruptly in return for being influenced in the performance of an official act. Mr. Masilotti had a hidden financial interest in the Diocese transaction. Mr. Masilotti, in his official role as a Palm Beach County commissioner, advocated for Mr. Miteff to the Village Manager of Royal Palm Beach. Mr. Masilotti was secretly compensated for those efforts when Mr. Miteff paid him approximately \$50,000 at the Atlantis Casino in the Bahamas. There is nothing in the record to support Mr. Masilotti's assertion that the payment he received in the Bahamas was some sort of "commission" rather than a bribe or kickback. Mr. Masilotti's conviction for his failure to disclose his hidden financial interest joined with the kickback or bribe he received from Mr. Miteff survives Skilling v. United States, 130 S. Ct. 2869 (2010). The objection is overruled.

District Court Order, Mar. 9, 2011, Case No. 9:10-cv-81137-KLR, ECF No. 16 at

2-3 (footnote and citations omitted). In any event, the district court noted,

Masilotti could not obtain relief from the forfeiture portion of his sentence through

a writ of habeas corpus under § 2241.

Masilotti did not appeal the district court's denial of his § 2241 petition.

**F. Masilotti's Federal Rule of Civil Procedure 60(b) Motion in 2011**

This appeal involves only Masilotti's 2011 motion to vacate the 2007 Final

Order of Forfeiture entered in his criminal case. Masilotti's 2011 motion

referenced Federal Rule of Civil Procedure 60(b)(5) and (6) as the basis for his

motion. Yet Masilotti filed his motion within his criminal case, Case No. 06-

9

80158.

In his Rule 60(b) motion, Masilotti again argued that the Supreme Court's Skilling decision narrowed the scope of the honest services fraud statute in a way that limited his criminal liability under that statute.  He argued that the 2007 Final Order of Forfeiture must be amended to reflect only the Diocese transaction and that the forfeiture of amounts and property not involved in the Diocese transaction constituted an excessive fine in violation of the Eighth Amendment to the United States Constitution.

The magistrate judge entered a report recommending denial of the Rule 60(b) motion because the district court lacked jurisdiction to modify a criminal order of forfeiture pursuant to a civil motion.  In an October 3, 2011 order, the district court adopted the report, rejected Masilotti's objections, and denied Masilotti's Rule 60(b) motion.

On October 18, 2011, 15 days after the district court's October 3rd order was entered, Masilotti filed a notice of appeal.

## II. DISCUSSION

A.    **The Timeliness of Masilotti's Appeal**

The government contends that Masilotti's appeal is untimely under the rules applicable to criminal cases.  Masilotti responds that his appeal is timely pursuant to the appellate rule governing civil appeals.  Although we agree with the

10

government that the criminal rules apply here, we conclude Masilotti's appeal was timely and explain why.

Ordinarily, a criminal defendant must file a notice of appeal within 14 days of the final judgment, as prescribed by Rule 4(b) of the Federal Rules of Appellate Procedure. Fed. R. App. P. 4(b)(1)(A). In contrast, in a civil case in which the United States is a party, Rule 4(a) requires the notice of appeal to be filed within 60 days of the final judgment. Fed. R. App. P. 4(a)(1)(B).

The criminal appeal rule applies because the forfeiture at issue was made a part of Masilotti's criminal sentence and was entered in his criminal case. Pursuant to 28 U.S.C. § 2461(c), described above, it was a criminal forfeiture. Although Masilotti's motion referenced and was thus brought under the civil rules, he filed it in his criminal case, and it challenged a criminal forfeiture order in his criminal case. Masilotti's appeal—despite being an appeal of the district court's denial of a Rule 60(b) motion—is a continuation of his criminal case. See Fed. R. Crim. P. 1 (stating that the Federal Rules of Criminal Procedure "govern . . . in all criminal proceedings"). Accordingly, we use Rule 4(b) to determine the timeliness of Masilotti's appeal.

Under Rule 4(b)'s 14-day period, Masilotti's notice of appeal from the October 3rd order, filed on October 18, 2011, is not timely but was one day late.[3]

---

[3]Although the time limit in Rule 4(b) is not jurisdictional as to criminal appeals, if the

But this does not resolve the matter because in criminal cases, this Court (1) may treat a notice of appeal filed fewer than 30 days late as a motion for extension of time to appeal under Rule 4(b)(4), and (2) may remand to the district court for a determination of whether good cause or excusable neglect exists to justify an extension.  See United States v. Ward, 696 F.2d 1315, 1317-18 (11th Cir. 1983); see also, e.g., United States v. Frandsen, 212 F.3d 1231, 1234 (11th Cir. 2000).

Moreover, while this appeal was pending, Masilotti filed with the district court a nunc pro tunc motion for an extension of time to file his notice of appeal, pursuant to Federal Rule of Appellate Procedure 4(b)(4), based on his counsel's excusable neglect and the existence of good cause.  The district court granted the motion over the government's objections.  Therefore, we need not remand because we already know the answer.  The district court has indicated it would grant the needed one-day extension.  Thus, we deny the government's request to dismiss Masilotti's appeal as untimely and turn to the merits of his appeal.[4]

## B.    The Merits of Masilotti's Appeal

The district court denied Masilotti's Rule 60(b) motion on the basis that Masilotti cannot challenge the forfeiture entered in his criminal case through, or based on, a civil motion under the Federal Rules of Civil Procedure.  We agree.

---

government raises the issue of timeliness, as it has done here, this Court "must apply the time limits of Rule 4(b)."  United States v. Lopez, 562 F.3d 1309, 1313-14 (11th Cir. 2009).

[4]Accordingly, the government's separate motion to dismiss the appeal or, in the alternative, remand the case to the district court is DENIED.

See United States v. Mosavi, 138 F.3d 1365, 1366 (11th Cir. 1998) (per curiam).

As this Court said in Mosavi,

> [t]he judgment and the order that the defendant contests were entered, not in a civil case, but in a criminal case, and a proper appeal of the forfeitures should have been raised in the defendant's criminal appeal of his conviction and sentence. Rule 60(b) simply does not provide for relief from judgment in a criminal case, and as such the defendant cannot challenge the criminal forfeitures at issue under Fed. R. Civ. P. 60(b).

Id. (emphasis added).   The district court correctly denied Rule 60(b) relief.

Masilotti contends that Mosavi is distinguishable because it involved a forfeiture under 18 U.S.C. § 982, which specifically applies to criminal forfeiture, while his forfeiture order was under 18 U.S.C. § 981, which governs civil forfeiture.  Masilotti is wrong because his forfeiture was not a civil forfeiture under § 981.  The forfeiture order here was entered in Masilotti's criminal case pursuant to the Federal Rules of Criminal Procedure and made part of his criminal sentence as explicitly permitted under 28 U.S.C. § 2461(c).  The forfeiture of Masilotti's property was a criminal forfeiture proceeding, not a civil proceeding.

Alternatively, Masilotti argues that the district court should have exercised its inherent equitable jurisdiction to grant him a writ of error coram nobis.  Here Masilotti did not file a petition for a writ of error coram nobis.  Rather, in response to the government's memorandum opposing his motion to vacate, Masilotti referenced the district court's inherent equitable powers as an alternative basis of

relief. The magistrate judge's report, which the district court adopted, rejected Masilotti's equitable-jurisdiction argument. We do too. We need not decide if a writ of <u>error coram nobis</u> would ever pertain here because on the particular record before us, Masilotti fails to carry his burden of demonstrating that the district court erred in declining to exercise its inherent equitable jurisdiction.[5]

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Masilotti's Rule 60(b) motion.

**AFFIRMED.**

---

[5]We note that Masilotti, in his plea agreement, expressly waived his right to challenge the forfeiture here. His waiver explicitly encompassed <u>all</u> "constitutional, legal and equitable defenses" to the forfeiture, including any challenges on Eighth Amendment grounds. Masilotti does not contend that his waiver was not knowing or involuntary and thus unenforceable. <u>See United States v. Bushert</u>, 997 F.2d 1343, 1351 (11th Cir. 1993) (holding that a sentence appeal waiver will be enforced if it was made knowingly and voluntarily).